[No. 15677. Department Two.—May 23, 1895.]

## JOSEPH W. TAYLOR, APPELLANT, v. W. R. HEARST, RESPONDENT.

LIBEL—DEFINITION.—Libel is a false and unprivileged publication which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his business.

ID.—LIABILITY OF NEWSPAPER PROPRIETOR—KNOWLEDGE OF PUBLICATION. The proprietor of a newspaper in which a libel is published, though he had no knowledge of the publication at the time, is as responsible for it as he would have been if it had been done by him personally, or under his direct supervision.

ID.—MALICE.—To constitute libel there must be malice actual or implied, on the part of the publisher, the malice being actual when the publication is made through motives of ill-will and with intent to injure or defame; and is implied or presumed in law when the article published is libelous per se.

ID.—EXEMPLARY DAMAGES—MITIGATING CIRCUMSTANCES—ACTUAL DAMAGES.—Where the defendant has been guilty of malice, actual or presumed, the jury may give exemplary damages; but the defendant may prove any mitigating circumstances to reduce the amount of the damage, and may prove that there was no malice in fact to prevent exemplary damages; but such proof is not sufficient to defeat the action or to prevent the plaintiff from recovering such damages as he has actually sustained by reason of the publication.

ID.—MISTAKE IN NAME OF PERSON LIBELED—ACTUAL DAMAGES.—Where a published article is libelous per se, the fact that it was made to apply to the plaintiff by mistake in his initials, and was intended to apply to another person, does not justify or excuse the publication, and whether such publication was by design, or was the result of carelessness in setting the type, is a matter of no consequence so far as the question of actual damages is involved.

ID.—CORRECTION OR RETRACTION—PLEADING—EVIDENCE—MITIGATION OF DAMAGES.—A correction or retraction of the mistake or error may be properly pleaded and given in evidence, but can operate only in mitigation of damages, and not as a full defense to the action.

ID.—EXEMPLARY DAMAGES—QUESTION OF FACT—ABSENCE OF ILL-WILL— INSTRUCTION TO JURY.—The question whether there was such malice on the part of the defendant as would entitle the defendant to recover exemplary or punitive damages is ordinarily one of fact for the jury; but where it is clearly established that the publication was not made by reason of any ill-will against plaintiff, or with any intention to injure or defame him, the plaintiff is not entitled to exemplary or punitive damages, and the court may so instruct the jury.

ID.—NOMINAL DAMAGES — INJURY TO FEELINGS—PLEADING.—In considering the amount of actual damage the jury must consider the injury to the plaintiff's feelings, and it is not necessary that damages resulting from such injury be specially alleged, or that proof of such injury be specially given.

ID.—QUESTION OF DAMAGES FOR INJURY—NOMINAL DAMAGES—MAXIM.— In an action for libel the question of damages is for the jury; and the court cannot assume as matter of law that plaintiff is entitled to only nominal damages; nor can a verdict for the defendant be allowed to stand, under the maxim *de minimis non curat lex*, upon a claim that the plaintiff was entitled at most to only nominal damages.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion.

*J. C. Bates*, for Appellant.

The publication was libelous *per se*, and, as matter of law, malicious. (Civ. Code, sec. 45; *Lick* v. *Owen*, 47 Cal. 252, 258; *Wilson* v. *Fitch*, 41 Cal. 363; *Mowry* v. *Raabe*, 89 Cal. 609; *Avery* v. *Ward*, 150 Mass. 161; *Lombard* v. *Lennox*, 155 Mass. 70; 31 Am. St. Rep. 528; *Harris* v. *Zanone*, 93 Cal. 59; *Morey* v. *Morning Journal Assn.*, 123 N. Y. 210; 20 Am. St. Rep. 730, and cases cited.) Mitigating circumstances and justification should be pleaded as such. (Code Civ. Proc., sec. 361; Townshend on Libel and Slander, secs. 212, 361, 413; *Lick* v. *Owen, supra; Wilson* v. *Fitch, supra; Preston* v. *Frey*, 91 Cal. 110; *Spooner* v. *Keeler*, 51 N. Y. 538; *Upton* v. *Hume*, 24 Or. 420; 41 Am. St. Rep. 863.) The court erred in charging the jury that either merely nominal, or only

compensatory or actual damages, could be awarded. Exemplary damages may be recovered in an action of libel, even though there was no actual malice upon the part of the publisher. (*Morrison* v. *Press Pub. Co.*, 133 N. Y. 538; *Hintz* v. *Graupner*, 37 Ill. App. 510; 138 Ill. 158; *Schmisseur* v. *Kreilich*, 92 Ill. 347; *Clements* v. *Maloney*, 55 Mo. 359; *Ellis* v. *Whitehead*, 95 Mich. 105; *Buckley* v. *Knapp*, 48 Mo. 161; *Holmes* v. *Jones*, 121 N. Y. 467, and cases there cited; *Morey* v. *Morning Journal Assn.*, *supra;* *Hamilton* v. *Eno*, 81 N. Y. 116; *Shipp* v. *Story*, 68 Ga. 47; *Lobe* v. *Cary*, 33 La. Ann. 914; *Clifford* v. *Cochrane*, 10 Ill. App. 574; *Chaddock* v. *Briggs*, 13 Mass. 248; 7 Am. Dec. 137.) From the falsity of the charge, in words actionable *per se*, as to plaintiff, the law presumes malice. (*Baldwin* v. *Fries*, 46 Mo. App. 296; *Lick* v. *Owen, supra*.) Negligence of the publisher is sufficient, even in the absence of malice, to justify exemplary damages. (*Rutherford* v. *Morning Journal Assn.*, 47 Fed. Rep. 487; *Osborne* v. *Troup*, 60 Conn. 491; *Hatt* v. *Evening News Assn.*, 94 Mich. 118, 119; *Warner* v. *Press Pub. Co.*, 132 N. Y. 185; *Wilson* v. *Fitch, supra; Holmes* v. *Jones, supra*.) The motive of the defendant was a question for the jury. (*Hamilton* v. *Eno*, 81 N. Y. 116.) An unqualified retraction of a false publication as to a person is only admissible in mitigation or reduction of damages, and never a bar or extinguishment of damages. (*Shipp* v. *Story, supra;* Townshend on Libel and Slander, sec. 413; *Hotchkiss* v. *Oliphant*, 2 Hill, 510; *Lick* v. *Owen, supra*.)

*W. W. Foote*, for Respondent.

The plantiff failed to establish a case, as he failed to prove that the defamatory matter was published or spoken concerning him. (*De Witt* v. *Wright*, 57 Cal. 576; *Harris* v. *Zanone*, 93 Cal. 59.) Plaintiff having failed to sustain his allegation of malice by proof, his damages must be limited to the direct and natural consequence of defendant's act, and must be susceptible of computation. (*Selden* v. *Cashman*, 20 Cal. 56; 81 Am.

Dec. 93.) Even if the plaintiff were entitled to nominal damages the verdict should not be set aside upon that ground. (*McAllister* v. *Clement* 75 Cal. 182.) The mere negligence of the publisher would not, in the absence of malice, entitle the plaintiff to exemplary damages. (Civ. Code, sec. 3333; *Durgin* v. *Neal*, 82 Cal. 595.) There was no error in the court stating that pleading justification was privileged. (Civ. Code sec. 47; *Hollis* v. *Meux*, 69 Cal. 625; 58 Am. Rep. 574; *Ball* v. *Rawles*, 93 Cal. 222; 27 Am. St. Rep. 174.)

Belcher, C.—The defendant, W. R. Hearst, was sole proprietor of the daily newspaper published in San Francisco and known as the *Examiner*. On January 10, 1892, there appeared in that paper an article charging, in substance, that J. W. Taylor had a contract with the city of San Francisco to supply basalt blocks for paving streets, at the rate of $45 per 1,000, and that he and one Henry Barron, who had been appointed keeper of the corporation yard near the foot of Sixth street, and whose duties required him to keep track of material belonging to the street department, had conspired together to cheat and defraud the city by getting fraudulent receipts for blocks never delivered; that 34 fraudulent receipts were obtained for 34 loads of blocks not delivered, and that afterward Taylor swore to and filed a demand for payment on his contract, including the 34 bogus loads; that steps were then taken to prosecute him for perjury, but it was found that the demand had been sworn to before a clerk of the board of supervisors not authorized to administer an oath, and so the only thing for the city to do was to keep Mr. Taylor's demand until the bogus 34 loads were eliminated from it.

The defendant had no knowledge of this article before or at the time of its publication, but his attention was called to it, and four days later a correction thereof was published in the paper in the following words:

"A CORRECTION.

" In an article which appeared in these columns on

Sunday last referring to frauds on the public in connection with the furnishing basalt blocks to the city, the initials of J. N. Taylor were erroneously printed 'J. W.' J. W. Taylor, the contractor, had nothing to do with the transaction, and was in no way associated with Henry Barron, who was arrested at the same time as J. N. Taylor for conspiracy."

In April, 1892, plaintiff commenced this action, alleging in his complaint that he was then, and had been for more than ten years, engaged in the business of manufacturing and supplying basalt blocks to the city and county of San Francisco, and to various persons and corporations in the city; that the defendant was the sole proprietor and publisher of the newspaper named the *Examiner*, which had a large and extensive circulation in the city and county of San Francisco, and throughout the entire state of California; that on January 10, 1892, the defendant did falsely and maliciously publish in said newspaper of and concerning the plaintiff the article before referred to, a copy of which was annexed to the complaint as an exhibit, and "that by means of said false, malicious, and defamatory publication said defendant intended it to be believed and understood, and that it was generally understood by those who read said article in said newspaper, that this plaintiff had been and was guilty of the crime of stealing and thieving by the use of fraudulent receipts, and swearing to false demands against the city and county; and it also was intended by said defendant that said article was to be understood and believed, and it was generally understood, that said plaintiff was dishonest in his business and occupation of contracting with the said city and county in furnishing basalt blocks, and that he merely escaped prosecution for the crime of perjury, because the deputy clerk of the board of supervisors was not authorized to administer the oaths to the fraudulent demands"; and that by reason of said publication plaintiff had been greatly injured in his good

name and reputation, to his damage in the sum of $10,000, for which he asked judgment.

The answer admits that defendant was the proprietor and publisher of the *Examiner*, and that the said article was published therein on the 10th of January, 1892, but denies that he falsely or maliciously published the same of or concerning the plaintiff, and specifically denies all the other material averments of the complaint. It then alleges that the said charges were not made against the plaintiff, and were not intended to be considered or understood as charges against the plaintiff, but were made, and were intended to be so considered, against one J. N. Taylor, and that in the printing of said article the initials of said J. N. Taylor were printed J. W., and that as soon as said mistake was discovered a correction thereof was duly published in the news columns of the said paper in the words above set out.

The case was tried before a jury, and the verdict was in favor of the defendant. Judgment was thereupon entered that the plaintiff take nothing by the action, and that defendant recover his costs, amounting to the sum of $165.50. The plaintiff moved for a new trial, which was denied, and has appealed from the judgment and order.

It was proved at the trial in defense of the action that there was a John N. Taylor who had had a contract with the city to furnish basalt blocks, and had presented a bill against the city for 207,004 basalt blocks at $53 per 1,000, which was sworn to by him; that the superintendent of streets deducted from the bill $349.80 on the ground that 6,600 of the blocks had not been furnished, and that there was a prosecution against Taylor for perjury, but the prosecution was dismissed because the oath was taken before the deputy clerk of the board of supervisors. It was also proved that the person who wrote the article complained of was directed by the managing editor of the *Examiner* to see the superintendent of streets, and get the actual facts as to the frauds that were being perpetrated upon the city in fur-

nishing basalt blocks, and that he did so; and that by mistake, and without any malice toward the plaintiff, the middle initial of Taylor's name was printed "W" when it should have been "N."

The only evidence introduced showing that any other persons who read the said article understood it as applying to the plaintiff, and the only evidence as to damage resulting from the publication was that of the plaintiff himself who testified: "I have suffered this much actual damage, that lots of my friends all over the county say: 'You are a pretty fellow; what are you going to do now? Are you going to San Quentin next?' I don't know that I have lost any money by it. I have lost a lot of credit by it."

The court refused to give to the jury any of the instructions asked by the plaintiff, but gave, among others, the following:

"5. The court further instructs you, as a matter of law, that the publication in question being as to the plaintiff untrue and unprivileged, is libelous, and that the plaintiff is entitled to such compensatory damages as shall afford a reparation for all the injury which has naturally and proximately resulted from the publication; *provided*, you find that the defendant meant to charge J. W. Taylor, the plaintiff, with the commission of the offenses contained in the publication, and that third persons understood that the person meant was J. W. Taylor, the plaintiff. The amount of these damages, if you find for the plaintiff, is to be determined by you in accordance with this rule, and it is within your power, under the circumstances of the case, to award the plaintiff *nominal* damages only."

"6. Under certain circumstances the recovery may go beyond mere reparation or compensation, and the jury may award that which the law terms 'punitive' or 'exemplary' damages. To authorize such damages, however, it must appear from the circumstances of the case that the wrongdoer acted with a malicious purpose toward the person aggrieved, with a wicked and malig-

nant intention to injure, and that the wrong was not the result of a mistake of fact, or the honest misapprehension as to either right or duty. From this statement you will see that 'punitive' or 'exemplary' damages cannot, as a matter of law, be awarded by you under the facts of this case."

"7. You are restricted to compensatory damages in the event that you find for the plaintiff, which I have already told you may be nominal."

The plaintiff excepted to each of these instructions, and now assigns the giving of them as errors.

Libel is a false and unprivileged publication which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his business; and the proprietor of a newspaper in which a libel is published, though he had no knowledge of the publication at the time, is as responsible for it as he would have been if it had been done by him personally or under his direct supervision.

To constitute libel there must be malice, actual or implied, on the part of the publisher. Actual malice exists when the publication is made through motives of ill-will, and with intent to injure or defame, and the law presumes malice when the article published is libelous *per se.* Such malice is called malice in law, and it signifies a wrongful act intentionally done.

Under our statute, in an action for libel, where the defendant has been guilty of malice, actual or presumed, "the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." (Civ. Code, sec. 3294.) The defendant may, however, prove any mitigating circumstances to reduce the amount of the damages (Code Civ. Proc., sec. 461); and, among other things, he may prove that there was no malice in fact. But such proof is not sufficient to defeat the action, or to prevent the plaintiff from recovering such damages as he has actually sustained by reason of the publication. (*Wilson* v. *Fitch,*

41 Cal. 363; *Lick* v. *Owen*, 47 Cal. 252; *Mowry* v. *Raabe*, 89 Cal. 606; *Childers* v. *San Jose Mercury Printing & Pub. Co.*, 105 Cal. 284.)

In the case last cited . it is said: "Two classes of damages may be recovered in actions for libel, to wit, actual or compensatory damages and exemplary damages. Special damages, as a branch of actual damages, may be recovered when actual pecuniary loss has been sustained, and is specially pleaded. The remaining branch of actual damages embraces recovery for loss of reputation, shame, mortification, injury to feelings, etc; and, while special damages must be alleged and proven, general damages for outrage to feelings and loss of reputation need not be alleged in detail, and may be recovered in the absence of actual proof, and to the amount that the jury estimates will fairly compensate plaintiff for the injury done. (*Wilson* v. *Fitch*, 41 Cal. 386.) Exemplary damages may be recovered when malice on the part of the defendant is established as a fact."

The article here complained of was libelous *per se*. It charged J. W. Taylor with dishonesty and criminal conduct, and, according to plaintiff's undisputed testimony, must have been understood by his friends as applying to him. It is true it was made to apply to him by mistake, but that did not justify or excuse the publication. As said in the note to *McAllister* v. *Detroit Free Press Co.*, 15 Am. St. Rep. 339, where the authorities on the subject of libel are very fully reviewed: "One who has published a libel on another cannot successfully resist the latter's action for redress, by showing he did not intend to publish it, and that its publication was due to carelessness, inadvertence, or mistake. Hence, it is not a sufficient defense that the publication of a libel resulted from an error in setting type."

The "correction" or retraction published was properly pleaded and given in evidence, but it could operate only in mitigation of damages, and not as a full defense to the action.

By instruction No. 5 the court told the jury that, the

publication being untrue and libelous as to the plaintiff, he was entitled to such compensatory damages as would afford a reparation for all the injury which had naturally and proximately resulted from the publication; "*provided*, you find that the defendant meant to charge J. W. Taylor, the plaintiff, with the offenses contained in the publication, and that third persons understood that the person meant was J. W. Taylor, the plaintiff." This was in effect telling the jury, and it must have been so understood, that *unless* the defendant meant to charge the plaintiff with the offenses contained in the publication, *and* third persons so understood it, the plaintiff was not entitled to recover compensatory damages for the injury he had sustained.

The proviso attached to the instruction was erroneous. The publication did charge the plaintiff with offenses, and whether it did so by design, or was the result of carelessness in setting type, was a matter of no consequence, so far as the question of actual damages was involved.

It is claimed for appellant that instruction No. 6 was also erroneous, but we see in it no prejudicial error. It is true that in an action for libel the question whether there was such malice on the part of the defendant as would entitle the plaintiff to recover exemplary or punitive damages is ordinarily one of fact for the jury. But in this case it was clearly established that the publication was not made by reason of any ill-will against the plaintiff, or with any intention to injure or defame him. That being so, the plaintiff was not entitled to exemplary or punitive damages, and the court did not err in so telling the jury.

One of the instructions asked by the plaintiff and refused was in these words: "In considering the amount of damages to be awarded, you may consider the injury to the plaintiff's feelings."

This instruction should have been given. It was not necessary that damages resulting from injury to feelings be specially alleged, or that proof of such injury be specially given.

It is claimed for respondent that the plaintiff was entitled at most to only nominal damages, and that in such case the verdict should not be disturbed, citing the maxim *de minimis non curat lex*.

The same point was made in *Lick v. Owen, supra*, and the court said: "The rule may possibly be as stated in actions *ex contractu*, when, for the technical breach of a contract, the court can see that, as matter of law, the plaintiff would be entitled to only nominal damages. But in an action for libel the question of damages is for the jury, and the court cannot assume, as matter of law, that the plaintiff is entitled to only nominal damages."

The judgment and order should be reversed and the cause remanded for a new trial.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial.

McFARLAND, J., TEMPLE, J., HENSHAW, J.

Hearing in Bank denied.