## BUTLER v. EVERY EVENING PRINTING CO.

(Circuit Court, D. Delaware. November 22, 1905.)

1. LIBEL—DAMAGES.

Where, in an action for injury to reputation and feelings sustained through a newspaper publication, false and libelous per se, the plaintiff waives all claim to punitive damages, and limits the demand to purely compensatory damages, it is the effect which the libel is calculated to have upon the minds of its readers, and not any actual intent on the part of the defendant to defame the plaintiff, that is material in the consideration of damages for the injury.

2. SAME—QUESTION FOR JURY.

It is peculiarly within the province of the jury to determine the quantum of damages in an action for libel or slander, and unless there is a clear abuse of discretion on its part the court will not disturb the verdict; the material question being, not whether the court thinks that the plaintiff was awarded a larger or a smaller amount of damages than the court would have allowed had the quantum of damages been left to its determination, but whether the amount of damages is so excessive as to cause the court to believe that the jury was actuated by prejudice, partiality or corruption in making its award.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 364.]

(Syllabus by the Court.)

John P. Nields and H. E. Hargrave, for plaintiff.
Thomas F. Bayard, for defendant.

BRADFORD, District Judge. Annie Butler, a citizen of New Jersey, having brought an action on the case against the Every Evening Printing Company, a corporation of Delaware, for the recovery of damages for the publication by the defendant of a libel upon her, the jury rendered a verdict in her favor for $3,600 and costs. The defendant has moved that the verdict be set aside and for a new trial, assigning ten reasons. The reasons from 1 to 7, both inclusive, allege error on the part of the court with respect to the following portions of the charge:

"If, however, you find the article in question was published by the defendant, then the further question arises whether or not the article referred to the plaintiff or was in whole or in part of such a character as to cause ordinary readers thereof to believe that it applied to the plaintiff. * * * If you find that the article did refer to the plaintiff or in whole or in part was of such a character as to create such belief, the further question then arises whether or not the article in whole or in part contained a libel upon the plaintiff. * * * The question for your determination in this connection is, not whether the article complained of contains inaccuracies or mis-statements on minor or less conspicuous points bearing upon or against the identity of the Annie Butler mentioned in the article with the plaintiff, but whether, in view of the circumstances above mentioned, ordinary readers of the article and par-

ticularly those unacquainted with her domestic relationships would not naturally and reasonably be led to the belief or conclusion that the 'Annie Oakley' mentioned in the article was one and the same person with the plaintiff. * * * If full credence be given to the testimony of Mrs. Fonteneillo, does it serve to show that the article complained of would not be regarded by ordinary readers as referring to the plaintiff? * * * As between Mrs. Fonteneillo shooting under the name of Lilian Cody or Any Oak Lay, and the plaintiff shooting under the name of Annie Oakley, and in view of the language of the article and the evidence as to the established and far-reaching fame of the plaintiff, what is the only reasonable conclusion as to the effect of the newspaper article upon the minds of the great mass of readers? * * * It may be true, and probably is true, that portions of the newspaper article are applicable to Mrs. Fonteneillo, but it does not by any means follow from that fact, if it be a fact, that the newspaper article did not refer to the plaintiff and would not be generally understood and considered as referring to her. If you are satisfied by the evidence that the newspaper article referred to the plaintiff and would be so considered by ordinary readers, did it or not contain a libel upon the plaintiff?"

The counsel for the defendant contends that there was error in the foregoing passages from the charge, in that, in order to justify a verdict for the plaintiff, the defendant in publishing the article must have actually intended it to refer or apply to the plaintiff, and it was insufficient that the article was of such a character as to cause ordinary readers to believe that it referred to her. This position clearly is untenable. The article, as applied to the plaintiff, admittedly was false and libelous per se; but, all claim to punitive or exemplary damages having been waived, the cause of complaint did not involve the existence of an actual intent on the part of the defendant to defame or to refer to the plaintiff in making the publication. It safely may be assumed that the defendant intended or understood that the libelous matter would or should refer to some person; and, undoubtedly, if the article was distinctly and distinctively applicable to the plaintiff and would be so understood by ordinary readers, the law presumes an intent on the part of the defendant to refer to and defame her; and whether or not the article was so distinctly and distinctively applicable and would be so understood by ordinary readers were questions left to the jury to determine on the evidence. The plaintiff sought to recover damages for the injury done to her reputation as well as to her feelings; and it was the effect which the article was calculated to have upon the minds of the mass of its readers, and not any actual intention on the part of the defendant to defame the plaintiff, that was material in the consideration of the injury to reputation. This conclusion is supported by abundant authority. Wigmore on Ev. vol. 3, § 1971; 2 Greenl. on Ev. (15th Ed.) § 417, note "b"; Odgers on L. & Slan. *93; Hankinson v. Bilby, 16 Mees. & W. *442; Shepheard v. Whitaker, L. R. 10 C. P. 502; Haire v. Wilson, 9 B. & C. *643; Taylor v. Hearst, 107 Cal. 262, 271, 40 Pac. 392; Clark v. North American Co. (Pa.) 53 Atl. 237.

The remaining three grounds assigned in support of the motion are to the effect that the damages awarded by the jury were grossly excessive. It is peculiarly within the province of the jury to determine the quantum of damages in an action for libel or slander. Odgers on L. & Slan. *293. Unless there is a clear abuse of discretion on the part of the jury the court will not disturb the verdict. In the absence of

such abuse of discretion, any interference by the court in the matter of damages would involve usurpation by the court of a distinctive function of the jury. The court observed much care. in charging the jury with respect to damages, as will appear from the following extracts:

"It is proper that I should state at the outset that the mere fact that the defendant is a corporation should not operate to its prejudice, for a corporation when sued for an alleged wrong should receive the same measure of justice, no less and no more, than a private individual sued for a similar wrong. * * * If, then, gentlemen, you are satisfied that the plaintiff is entitled to pecuniary redress, the question presents itself upon what basis and within what limits such redress should be granted by your verdict, in case you find one for the plaintiff. In cases where a defamatory printed statement or writing is published wantonly, maliciously and with intent to degrade and destroy one's reputation, juries are warranted, and it may even be their duty, to do more than simply compensate the injury sustained by the person libeled. In such cases exemplary, vindictive or punitive damages may be awarded by way of punishment, in addition to compensatory damages. But in this case the counsel for the plaintiff has expressly disavowed any claim to exemplary, vindictive or punitive damages; and should you find a verdict for the plaintiff, it must be restricted to compensatory damages, which should be in such an amount, within the limits claimed in the declaration, as will compensate the plaintiff for the wrong done to her without respect to any question of punishment of the defendant. It is not necessary to a recovery by the plaintiff that she should have either alleged or proved special damage, if she has otherwise suffered an actionable wrong at the hands of the defendant. * * * The plaintiff stands before you wholly unimpeached in character or reputation, and the law presumes, in the absence of evidence to the contrary, her good character. The law recognizes the value of a good character or reputation, and imposes upon one who attacks it by a libelous publication a liability to make full compensation for the damage to that character or reputation and for the shame and mental suffering caused by the publication of the libel. * * * Of course, in a case like the present, it is impossible to apply any fixed scale to ascertain the amount of damages which should be awarded on account of the injury for which the plaintiff seeks compensation. It is not like the case of a claim for damage to tangible property, where the amount of damage may be computed with comparative accuracy. The amount to be awarded to the plaintiff, in case you find that she is entitled to recover, should be such as will fully compensate her for the wrong done to her reputation, good name or fame, and for mental suffering caused thereby; and in the assessment of this amount you, as intelligent and prudent men, in the light of your experience and knowledge of human affairs, will exercise sound judgment and discretion. In dealing with the question of damages you should take into consideration, among other circumstances disclosed in the case, the evidence as to the circulation of the defendant's paper—which according to my recollection was upwards of 10,000—and any other evidence bearing upon the territorial distribution of the defendant's paper at. the time of the publication of the article complained of, and you should also duly weigh and consider the harmful character of the libelous matter. * * * If you are not satisfied on the evidence and under the instructions given you by the court that the plaintiff is entitled to recover anything, your verdict should be for the defendant; but if, on the other hand, you are satisfied on the evidence and under the instructions which the court has given you. that the plaintiff is entitled to recover, your verdict should be for the plaintiff in such an amount of damages as she has sustained by reason of the publication by the defendant of the article in question, to be assessed in accordance with the instructions which the court has already given you, and to be restricted to compensatory damages."

There was no evidence of special damages in the case, and it cannot be assumed that the jury, in the face of the charge delivered by the

court, considered or allowed any sum by way of punitive damages in arriving at a verdict. The sum of $3,600 awarded by the jury must therefore be considered as representing purely compensatory damages which in its judgment the plaintiff was entitled to recover on account of the wrong done to her reputation and feelings. The jury was one of more than average intelligence and had the case under consideration in its chamber for several hours before reaching a verdict. The question in this connection is not whether the court thinks that the plaintiff was awarded a larger or a smaller amount of damages than the court would have allowed, had the quantum of damages been left to its determination; for, as before stated in substance, it is the province of the jury and not of the court to fix the amount. The question is whether the amount of the damages is so excessive as to cause the court to believe that the jury was actuated by prejudice, partiality or corruption in making its award. In Coleman v. Southwick, 9 Johns. 45, 6 Am. Dec. 253, which was an action for libel, Kent, C. J., said:

"The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries. * * * The court cannot interfere, unless the damages are apparent, 'so that they can properly judge of the degree of the injury. Generally, in such cases, they cannot say whether five hundred pounds was too much, or fifty pounds would have been too little. The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

In Gibson v. Cincinnati Enquirer, Fed. Cas. No. 5,392, Brown, J., said:

"Nothing is more difficult than to determine in an action of tort, for injury to person or reputation, what damages are excessive. In actions upon contract they can, ordinarily, be computed with some degree of certainty. Frequently they are the subjects of mere mathematical calculation. In such cases a slight excess might justify the court, if not in setting aside the verdict, at least in making the refusal of a new trial conditioned upon a reduction; but in actions of tort an exact computation is not only impossible, but there is frequently an entire absence of data from which the amount of damages can be approximately estimated, and especially is this so in regard to injuries to person or to reputation. In actions for libel so much depends upon the relative situation of the parties, the character of the language used, and the amount of the publicity given to the libel, that it is scarcely too much to say there is no rule beyond the discretion of the jury."

The libel proved in this case was very gross, and the character of the plaintiff wholly unimpeached. While the court might or might not have differed from the jury with respect to what would be adequate compensation for the plaintiff, I am unable to say that, on the case as

made by the evidence, the jury could not reasonably and in the exercise of a sound discretion have awarded $3,600 as compensatory damages; and, consequently, there is nothing to cause the court to believe that the jury was actuated by passion, prejudice, partiality, corruption or other improper motives or influences in reaching the result. The reports disclose many cases in which verdicts have been sustained awarding compensatory damages in even a larger amount where the libel was not more gross or injurious than that in question. For the foregoing reasons the motion to set aside the verdict and for a new trial is denied; and judgment must accordingly be entered on the verdict.