Hillsborough,
Dec. 5, 1905.

## GENDRON *v.* ST. PIERRE.

73    419
74    398
74    406

In an action for slanderously charging a husband with causing or hastening the death of his wife by neglect during her illness, it is not necessary that the declaration should allege that the plaintiff had exclusive care of the deceased.

In such action, the declaration is not defective merely because the defendant's utterances do not amount to a direct accusation, if they substantially constitute a charge of culpable neglect of marital duty.

A declaration in an action for slander is not demurrable on the ground that an inuendo extends the meaning of preceding words, if it appears from facts recited in the inducement and other utterances of the defendant that the language to which the inuendo applies may have been used in the sense stated therein.

A false imputation of crime is not divested of its slanderous quality or injurious effect by the employment of the introductory words "I think."

A failure to except to the denial of a motion to set aside a verdict as against the evidence and because of excessive damages concludes the moving party in a subsequent application of a similar nature.

The objection that the plaintiff's evidence is insufficient to support his declaration is waived by a submission of the case upon the merits, without a motion for a nonsuit or for an order of judgment in the defendant's favor.

Slanderous words spoken in a manner and sense to impute crime are impliedly malicious, and the mental disturbance caused thereby may properly be considered as an element of damage.

CASE, for slander. Trial by the court and verdict for the plaintiff for $50. Transferred from the January term, 1905, of the superior court by *Chamberlin*, J.

The original writ contained two counts. The second count (see 72 N. H. 400) was struck out by amendment. The first count, as amended since the former transfer of the case, is in substance as follows: In a plea of the case, for that, whereas the plaintiff is a good, true, and just citizen of said state, and from the time of his birth has always behaved and governed himself as such, . . . and during all that time has never been guilty, nor justly suspected of having been guilty, of cheating, deceit, fraud, or any crime whatsoever, and whereas said plaintiff, on the 29th day of October, 1900, at said Manchester, was an honest and law-abiding citizen of said Manchester, and has always maintained himself by industrious attention to his business, and supported and maintained his family and treated his wife kindly, giving her of his money and attention all within his power, nevertheless, the

defendant, not being ignorant of the premises, but fraudulently, maliciously, and wickedly contriving to injure, blacken, and defame the plaintiff in his good name and reputation, . . . and to expose him to pains and penalties prescribed by law, did on, etc., at, etc., in presence of divers good citizens, etc., utter and publish the following false, scandalous, and malicious words of and concerning the plaintiff, to wit: " When I first visited the woman [meaning the wife of said plaintiff] she appeared to be sadly neglected, and I at once became suspicious of insurance fraud. My suspicions were not lessened by the apparent indifference of the woman's husband and sister, with reference to her condition. I learned that the magnetic healer who had been treating her had been discharged on recommendation of a priest, who said that the medicines should be thrown away. I examined the remedies the magnetic healer had been using, and was surprised to find that they were all right. I believe that if their use had been continued, the woman [meaning the plaintiff's wife] might have recovered. As it was, she [meaning the plaintiff's wife] went three days without any medical attendance [meaning she was willfully neglected by said plaintiff]; then I was called. I was told that there was insurance on the woman's [meaning the plaintiff's wife's] life. Mr. Gadbois came to me yesterday, and I refused to sign the death certificate. The woman's [meaning the plaintiff's wife's] body had been removed from 'the Orange-street house to her home on Church street. I did not know until I investigated whether the woman I had treated was dead, or whether it was some other. Furthermore, I was suspicious with regard to the insurance. I think the woman [meaning the plaintiff's wife] was neglected in order that her family might get her insurance " (meaning that she, the plaintiff's wife, was culpably neglected in her sickness by the plaintiff, so that she, the plaintiff's wife, might die, and he, the plaintiff, might receive the insurance upon her life). The declaration further alleges that, by reason of the publication of these words, the plaintiff was brought into great infamy and contempt among his fellow-citizens, and has suffered great anxiety of mind and been exposed to pains and penalties prescribed by law. The defendant's demurrer to the declaration was overruled, subject to exception.

The defendant's petition for a new trial on account of newly discovered evidence was denied, February 21, 1905, after a hearing. ·At this hearing the defendant's motion to set aside the verdict because it was against the evidence and because the damages were excessive, and his request that all the testimony be transferred, were denied. It was found by the court ·that the defendant waived his right to make said motions by not making them at

the close of the plaintiff's testimony, or at the close of all the testimony.

April 29, the defendant filed a motion to set aside the verdict because (1) upon the evidence, as matter of law, the defendant was not guilty of slander of the plaintiff; (2) the verdict was contrary to the law and the evidence; (3) it is wholly unsupported by the evidence; (4) the evidence, as a matter of law, did not sustain the allegations of the declaration; (5) the damages assessed were contrary to the law; and (6) they were wholly contrary to the evidence. This motion was denied, subject to exception. The defendant then requested that the evidence relating to the charge of slander and the damages be made a part of the case. The request was denied, and the defendant excepted.

*Andrews & Andrews*, for the plaintiff.

*Branch & Branch* and *John P. Bartlett*, for the defendant.

CHASE, J. The plaintiff, by his declaration, places his right of action wholly on the ground that the alleged slanderous words, *per se*, imputed to him the commission of the crime of killing his wife by his criminal negligence in omitting to perform a duty to her which the law imposed upon him. No question is made that a husband who can supply his wife with the necessities of life, and neglects to do so while she is living with him and is incapable of caring for herself by reason of sickness or other cause, is guilty of the crime of murder or manslaughter, according to the nature and degree of the negligence in respect to premeditation, willfulness, recklessness, and culpability, if her death is caused or hastened by such neglect. *Buch* v. *Company*, 69 N. H. 257, 260, 261; *State* v. *Smith*, 65 Me. 257; *Lewis* v. *State*, 72 Ga. 164; *Territory* v. *Manton*, 8 Mont. 95; *Regina* v. *Marriott*, 8 C. & P. 425, — 34 Eng. C. L. 816; *Regina* v. *Plummer*, 1 C. & K. 600, — 47 Eng. C. L. 600; *Regina* v. *Nicholls*, 13 Cox C. C. 75; 2 Bish. Cr. L., ss. 659, 686; P. S., c. 278, ss. 1–8. The demurrer raises the question whether the declaration sufficiently sets forth an imputation to the plaintiff of the commission of such a crime.

The defendant says the declaration is defective because it does not set forth that the plaintiff had the exclusive care of his wife, and does not allege, except in the inuendoes, that the plaintiff's negligence caused her death. It is stated in the inducement of the declaration that the plaintiff "has always . . . supported and maintained his family and treated his wife kindly, giving her of his money and attention all within his power." This necessarily implies the existence of the relation of husband and wife

between him and the woman referred to in the alleged slanderous words, an appreciation by him of the legal duty that pertains to that relationship, and an attempt on his part to fulfil the duty. It states facts showing that the duty was not removed or suspended for any cause, but still rested upon the plaintiff; and that he had the care of his wife, so far as his marital duty required him to assume such care. The alleged slanderous words also expressly state or necessarily imply the existence of the marital relation between the plaintiff—" woman's husband "—and the woman referred to, the legal duty arising from the relation, and that the wife was sick and needed medical care, medicines, and nursing,— in fact, that these were absolutely necessary to preserve her life, and the want of them caused her death. The allegation of the declaration that the words were uttered and published " of and concerning the plaintiff," in connection with the other allegation above quoted, and the words themselves, show that the words were spoken of and concerning the plaintiff in his marital relation to the sick woman and the performance of the legal duties he owed the woman by reason of that relation. Characterizing the plaintiff's conduct toward his wife as " apparent indifference with reference to her condition,"—indifference of such kind and degree as to induce a suspicion of fraud depending for its consummation upon her death,—accompanied with the statement that the woman " appeared to be sadly neglected," is an emphatic, though indirect, statement that he was culpably negligent in the performance of his legal duty to her. It falls little, if any, short of charging the husband with deliberate and premeditated negligence with a view of causing or hastening the wife's death. It was not necessary that the plaintiff should have the exclusive care of his wife to render him guilty of the crime, if he himself was criminally negligent. The fact that the wife's sister, the priest, or some other person was also equally guilty would not relieve the plaintiff from responsibility for his own negligence.

Another objection made to the declaration is that the slanderous words alleged in it are but an expression of a suspicion or opinion that the plaintiff committed the crime referred to; that they do not definitely charge the plaintiff with the crime. According to the defendant's alleged statements, his suspicion relating to insurance fraud was not the cause of his thinking that the wife was neglected. On the other hand, the neglect of her was the cause of his suspicion. He noticed when he first visited the woman that " she appeared to be sadly neglected," and he attributed the motive for this neglect to insurance fraud. He further stated, in substance, that there was neglect in omitting for three days to administer to her the remedies that had been prescribed by the

magnetic healer. If this omission was due to the advice of the priest, the fact would not necessarily show that the omission was not negligence of a culpable nature. He further asserted his belief that if the use of the remedies had been continued the woman might have recovered. He refused to sign a death certificate. These statements, taken together, naturally convey the impression that the wife's death was caused or hastened by criminal negligence. But he seems to have summed up the whole matter in the definite statement: "I think the woman was neglected in order that her family might get the insurance." The definiteness and injurious effect of this statement are not taken away or materially modified by the introductory words "I think." The expression "I think A murdered B" is quite likely to have the same effect upon the hearers that the expression "A murdered B" would have. If it be regarded as an expression of an opinion, it nevertheless imputes the crime to the plaintiff; and the imputation is supported and made more effective in this case by the fact that the defendant was called as the medical attendant of the wife. At least, a jury might find, from a consideration of the words in the light of the circumstances alleged, that the defendant meant by his statements absolutely to impute to the plaintiff the commission of a felony. *Moore* v. *Butler*, 48 N. H. 161; *Tozer* v. *Mashford*, 6 Exch. 539; *Simmons* v. *Mitchell*, 6 App. Cas. 156.

The defendant further says that the inuendo which follows the words "I think," etc., extends the sense of the words. The inuendo is: "Meaning that she, the plaintiff's wife, was culpably neglected in her sickness by the plaintiff, so that she, the plaintiff's wife, might die, and he, the plaintiff, might receive the insurance upon her life." When the facts recited in the inducement of the declaration, above referred to, and the other statements of the defendant are considered, it appears that the words to which the inuendo applies may have been used in the sense therein stated. As before stated, a jury might find that the defendant meant that the woman was neglected by her husband in order that she might die, and he or her family—it is immaterial which—might obtain the insurance which the defendant supposed was outstanding upon her life. The jury might think that describing such neglect as "culpable" limited rather than enlarged the idea expressed by the word without qualification. The inuendo does not appear to exceed its proper office. *Harris* v. *Burley*, 8 N. H. 256.

"It is immaterial whether the words spoken impute an offence to the plaintiff in a direct manner, or indirectly by such hints or modes of expression as are likely to convey the intended meaning to the persons to whom the words are addressed." *Sturtevant* v.

*Root*, 27 N. H. 69, 72; *Tenney* v. *Clement*, 10 N. H. 52; *Symonds* v. *Carter*, 32 N. H. 458. The defendant's words appear to have been of this character; and the declaration, though somewhat inartificially framed, contains sufficient recitals, allegations, and inuendoes, if proved, to render the defendant liable in an action for slander. *Robinson* v. *Keyser*, 22 N. H. 323. The demurrer was properly overruled.

There was no exception to the denials of the petition, motion, and request made prior to April 29, and consequently there is no question of law before the court with respect to these matters. The ground of the defendant's motion of April 29 to set aside the verdict is stated in several forms, but in substance it is that, upon the whole evidence, the verdict is "against the evidence" and so contrary to law, as to both the defendant's guilt and the damages. It is but a repetition of the previous motion to set aside the verdict. The denial of the first motion and the omission of the defendant to except to it concludes him upon the questions presented by the motion, unless, upon an application to the superior court for a rehearing, he shows that he is entitled to it by reason of accident, mistake, or misfortune. If the defendant desired to raise questions of law upon the denial of the motion, he should have done so at that time. Furthermore, the defendant waived his right to object on account of the insufficiency of the evidence to support the declaration, by his submission of the case to the court upon its merits, without making a motion for a nonsuit or for an order of judgment in his favor. *Elwell* v. *Roper*, 72 N. H. 585. *Non constat* that the plaintiff might not have been able and been allowed to introduce evidence to supply the deficiency if such motions had been made.

The declaration alleges that the slanderous words mentioned in it were false and were spoken of and concerning the plaintiff maliciously. If the words were used in a manner and sense to impute a crime, they imply malice; and the amount of the damages to which the plaintiff is entitled depends in part upon the effect of the malice upon the plaintiff's mind. *Symonds* v. *Carter*, 32 N. H. 458; *Friel* v. *Plumer*, 69 N. H. 498. It does not appear, as matter of law, that $50 would be excessive damages, even if there was no evidence of malice other than the publishing of the words, if they were found to be used in the sense above mentioned.

*Exceptions overruled.*

All concurred.