# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 24, 2006     Decided August 22, 2006

No. 05-5139

MARRITA MURPHY AND
DANIEL J. LEVEILLE,
APPELLANTS

v.

INTERNAL REVENUE SERVICE AND
UNITED STATES OF AMERICA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02414)

*David K. Colapinto* argued the cause for appellants. With him on the briefs was *Stephen M. Kohn*.

*Colin M. Dunham* was on the brief for amicus curiae No Fear Coalition in support of appellant.

*John A. Nolet*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Kenneth L. Greene*, Attorney. *Bridget M. Rowan*, Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Marrita Murphy brought this suit to recover income taxes she paid on the compensatory damages for emotional distress and loss of reputation she was awarded in an adminstrative action she brought against her former employer. Murphy contends that under § 104(a)(2) of the Internal Revenue Code (IRC), 26 U.S.C. § 104(a)(2), her award should have been excluded from her gross income because it was compensation received "on account of personal physical injuries or physical sickness." In the alternative, she maintains § 104(a)(2) is unconstitutional insofar as it fails to exclude from gross income revenue that is not "income" within the meaning of the Sixteenth Amendment to the Constitution of the United States.

We hold, first, that Murphy's compensation was not "received ... on account of personal physical injuries" excludable from gross income under § 104(a)(2). We agree with the taxpayer, however, that § 104(a)(2) is unconstitutional as applied to her award because compensation for a non-physical personal injury is not income under the Sixteenth Amendment if, as here, it is unrelated to lost wages or earnings.

## I. Background

In 1994 Marrita Leveille (now Murphy) filed a complaint with the Department of Labor alleging that her former employer, the New York Air National Guard (NYANG), in violation of various whistle-blower statutes, had "blacklisted" her and provided unfavorable references to potential employers after she

had complained to state authorities of environmental hazards on a NYANG airbase. The Secretary of Labor determined the NYANG had unlawfully discriminated and retaliated against Murphy, ordered that any adverse employment references to the taxpayer in Office of Personnel Management files be withdrawn, and remanded her case to an Administrative Law Judge "for findings on compensatory damages."

On remand Murphy submitted evidence that she had suffered both mental and physical injuries as a result of the NYANG's blacklisting her. A physician testified Murphy had sustained "somatic" and "emotional" injuries. One such injury was "bruxism," or teeth grinding often associated with stress, which may cause permanent tooth damage. Upon finding Murphy had also suffered from other "physical manifestations of stress" including "anxiety attacks, shortness of breath, and dizziness," the ALJ recommended compensatory damages totaling $70,000, of which $45,000 was for "emotional distress or mental anguish," and $25,000 was for "injury to professional reputation" from having been blacklisted. None of the award was for lost wages or diminished earning capacity.

In 1999 the Department of Labor Administrative Review Board affirmed the ALJ's findings and recommendations. *See Leveille v. N.Y. Air Nat'l Guard*, 1999 WL 966951, at *2-*4 (Oct. 25, 1999). On her tax return for 2000, Murphy included the $70,000 award in her "gross income" pursuant to § 61 of the IRC. *See* 26 U.S.C. § 61(a) ("[G]ross income means all income from whatever source derived"). As a result, she paid $20,665 in taxes on the award.

Murphy later filed an amended return in which she sought a refund of the $20,665 based upon § 104(a)(2) of the IRC, which provides that "gross income does not include ... damages ... received ... on account of personal physical injuries or

physical sickness." In support of her amended return, Murphy submitted copies of her dental and medical records. Upon deciding Murphy had failed to demonstrate the compensatory damages were attributable to "physical injury" or "physical sickness," the Internal Revenue Service denied her request for a refund. Murphy thereafter sued the IRS and the United States in the district court.

In her complaint Murphy sought a refund of the $20,665, plus applicable interest, pursuant to the Sixteenth Amendment, along with declaratory and injunctive relief against the IRS pursuant to the Adminstrative Procedure Act and the Due Process Clause of the Fifth Amendment to the Constitution of the United States. She argued her compensatory award was in fact for "physical personal injuries" and therefore excluded from gross income under § 104(a)(2). In the alternative Murphy asserted § 104(a)(2) as applied to her award was unconstitutional because the award was not "income" within the meaning of the Sixteenth Amendment. The Government moved to dismiss Murphy's suit as to the IRS, contending the Service was not a proper defendant, and for summary judgment on all claims.

The district court denied the Government's motion to dismiss, holding that Murphy had the right to bring an "action[] for declaratory judgments or ... [a] mandatory injunction" against an "agency by its official title," pursuant to § 703 of the APA, 5 U.S.C. § 703. *Murphy v. IRS*, 362 F. Supp. 2d 206, 211-12, 218 (2005). The court then rejected all Murphy's claims on the merits and granted summary judgment for the Government and the IRS. *Id.* at 218. Murphy now appeals the judgment of the district court with respect to her claims under § 104(a)(2) and the Sixteenth Amendment.

5

## II. Analysis

We review the district court's grant of summary judgment *de novo*, *Flynn v. R.C. Tile*, 353 F.3d 953, 957 (2004), bearing in mind that summary judgment is appropriate only "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Before addressing Murphy's claims on their merits, however, we must determine whether the district court erred in holding the IRS was a proper defendant.

### A. The IRS as a Defendant

The Government contends the courts lack jurisdiction over Murphy's claims against the IRS because the Congress has not waived that agency's immunity from declaratory and injunction actions pursuant to 28 U.S.C. § 2201(a) (Courts may grant declaratory relief "except with respect to Federal taxes") and 26 U.S.C. § 7421(a) ("no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person"); and insofar as the Government has waived immunity for civil actions seeking tax refunds under 28 U.S.C § 1346(a)(1), that provision on its face applies to "civil action[s] against the United States," not against the IRS. In reply Murphy argues only that the Government forfeited the issue of sovereign immunity because it did not cross-appeal the district court's denial of its motion to dismiss. *See* Fed. R. App. P. 4(a)(3). Notwithstanding the Government's failure to cross-appeal, however, the court must address a question concerning its jurisdiction. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 328 (D.C. Cir. 1989) ("As a preliminary matter ... we must address the question of our jurisdiction to hear this appeal").

Murphy and the district court are correct that § 703 of the APA does create a right of action for equitable relief against a federal agency but, as the Government correctly points out, the Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c) of the IRC. *See* 28 U.S.C. § 2201(a); 26 U.S.C. § 7421(a). As an agency of the Government, of course, the IRS shares in that immunity. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (agency "retains the immunity it is due as an arm of the federal sovereign"). Insofar as the Congress has waived sovereign immunity with respect to suits for tax refunds under 28 U.S.C. § 1346(a)(1), that provision specifically contemplates only actions against the "United States." Therefore, we hold the IRS, unlike the United States, may not be sued *eo nomine* in this case.

B. Section 104(a)(2) of the IRC

Section 104(a) ("Compensation for injuries or sickness") provides that "gross income [under § 61 of the IRC] does not include the amount of any damages (other than punitive damages) received ... on account of personal physical injuries or physical sickness." 26 U.S.C. § 104(a)(2). Since 1996 it has further provided that, for purposes of this exclusion, "emotional distress shall not be treated as a physical injury or physical sickness." *Id.* § 104(a). The version of § 104(a)(2) in effect prior to 1996 had excluded from gross income monies received in compensation for "personal injuries or sickness," which included both physical and nonphysical injuries such as emotional distress. *Id.* § 104(a)(2) (1995); *see United States v. Burke*, 504 U.S. 229, 235 n.6 (1992) ("§ 104(a)(2) in fact encompasses a broad range of physical and nonphysical injuries to personal interests"). In *Commissioner v. Schleier*, 515 U.S. 323 (1995), the Supreme Court held that before a taxpayer may

exclude compensatory damages from gross income pursuant to § 104(a)(2), he must first demonstrate that "the underlying cause of action giving rise to the recovery [was] 'based upon tort or tort type rights.'" *Id.* at 337. The taxpayer has the same burden under the statute as amended. *See, e.g., Chamberlain v. United States*, 401 F.3d 335, 341 (5th Cir. 2005).

Murphy contends § 104(a)(2), even as amended, excludes her particular award from gross income. First, she asserts her award was "based upon ... tort type rights" in the whistle-blower statutes the NYANG violated -- a position the Government does not challenge. Second, she claims she was compensated for "physical" injuries, which claim the Government does dispute.

Murphy points both to her physician's testimony that she had experienced "somatic" and "body" injuries "as a result of NYANG's blacklisting [her]," and to the *American Heritage Dictionary*, which defines "somatic" as "relating to, or affecting the body, especially as distinguished from a body part, the mind, or the environment." Murphy further argues the dental records she submitted to the IRS proved she has suffered permanent damage to her teeth. Citing *Walters v. Mintec/International*, 758 F.2d 73, 78 (3d Cir. 1985), and *Payne v. General Motors Corp.*, 731 F. Supp. 1465, 1474-75 (D. Kan. 1990), Murphy contends that "substantial physical problems caused by emotional distress are considered physical injuries or physical sickness."

Murphy further contends that neither § 104 of the IRC nor the regulation issued thereunder "limits the physical disability exclusion to a physical stimulus." In fact, as Murphy points out, the applicable regulation, which provides that § 104(a)(2) "excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness," 26 C.F.R. § 1.104-1(c), does not distinguish between physical injuries stemming from physical

stimuli and those arising from emotional trauma; rather, it tracks the pre-1996 text of § 104(a)(2), which the IRS agrees excluded from gross income compensation both for physical and for nonphysical injuries.

For its part, the Government argues Murphy's exclusive focus upon the word "physical" in § 104(a)(2) is misplaced; more important is the phrase "on account of." In *O'Gilvie v. United States*, 519 U.S. 79 (1996), the Supreme Court read that phrase to require a "strong[] causal connection," thereby making § 104(a)(2) "applicable only to those personal injury lawsuit damages that were awarded by reason of, or because of, the personal injuries." *Id.* at 83. The Court specifically rejected a "but-for" formulation in favor of a "stronger causal connection." *Id.* at 82-83. The Government therefore concludes Murphy must demonstrate she was awarded damages "because of" her physical injuries, which the Government claims she has failed to do.

Indeed, as the Government points out, the ALJ expressly recommended, and the Board expressly awarded, compensatory damages "because of" Murphy's nonphysical injuries. The Board analyzed the ALJ's recommendation under the headings "Compensatory damage for emotional distress or mental anguish" and "Compensatory damage award for injury to professional reputation." In describing the ALJ's proposed award as "reasonable," the Board stated Murphy was to receive "$45,000 for mental pain and anguish" and "$25,000 for injury to professional reputation." That Murphy suffered from bruxism or other physical symptoms of stress is of no moment, the Government argues, because "the Board awarded her damages, not to compensate [her for that] particular injur[y], but explicitly with respect to nonphysical injuries."

In reply Murphy merely reiterates that she suffered

"physical" injuries. She does not address the Government's point that she received her award "on account of" her mental distress and reputational loss, not her bruxism or other physical symptoms.

Murphy's failure to address the Government's position is telling. Although the pre-1996 version of § 104(a)(2) was at issue in *O'Gilvie*, the Court's analysis of the phrase "on account of," which phrase was unchanged by the 1996 Amendments, remains controlling here. Murphy no doubt suffered from certain physical manifestations of emotional distress, but the record clearly indicates the Board awarded her compensation only "for mental pain and anguish" and "for injury to professional reputation." *Leveille*, 1999 WL 966951, at *5. The Board thus having left no room for doubt about the grounds for her award, we conclude Murphy's damages were not "awarded by reason of, or because of, ... [physical] personal injuries," *O'Gilvie*, 519 U.S. at 83. Therefore, § 104(a)(2) does not permit Murphy to exclude her award from gross income.* But is that constitutional?

C. The Sixteenth Amendment

The Government of the United States is a government of limited powers: "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). The

---

*Insofar as compensation for nonphysical personal injuries appears to be excludable from gross income under 26 C.F.R. § 1.104-1, the regulation conflicts with the plain text of § 104(a)(2); in these circumstances the statute clearly controls. *See Brown v. Gardner*, 513 U.S. 115, 122 (1994) (finding "no antidote to [a regulation's] clear inconsistency with a statute").

constitutional power of the Congress to tax income is provided in the Sixteenth Amendment, ratified in 1913:

> The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

The Supreme Court has held the word "incomes" in the Amendment and the phrase "gross income" in § 61(a) of the IRC are coextensive. *See Helvering v. Clifford*, 309 U.S. 331, 334 (1940) (§ 61 represents the "full measure of [the Congress's] taxing power"). When it first construed those terms in *Eisner v. Macomber*, 252 U.S. 189, 207 (1920), the Supreme Court held the taxing power extended to any "gain derived from capital, from labor, or from both combined." Later, after explaining that *Eisner* was not "meant to provide a touchstone to all future gross income questions," the Court added that under the IRC -- and, by implication, under the Sixteenth Amendment -- the Congress may "tax all gains" or "accessions to wealth." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430-31 (1955).

Murphy argues that, being neither a gain nor an accession to wealth, her award is not income and § 104(a)(2) is therefore unconstitutional insofar as it would make the award taxable as income. Broad though the power granted in the Sixteenth Amendment is, the Supreme Court, as Murphy points out, has long recognized "the principle that a restoration of capital [i]s not income; hence it [falls] outside the definition of 'income' upon which the law impose[s] a tax." *O'Gilvie*, 519 U.S. at 84; *see, e.g.*, *Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 187-88 (1918); *S. Pac. Co. v. Lowe*, 247 U.S. 330, 335 (1918) (return of capital not income under IRC or Sixteenth Amendment). By analogy, Murphy contends a damage award for personal injuries

-- including nonphysical injuries -- is not income but simply a return of capital -- "human capital," as it were. *See* Gary S. Becker, *Human Capital* (1st ed. 1964); Gary S. Becker, "The Economic Way of Looking at Life," 43-45 (Nobel Lecture, Dec. 9, 1992).

According to Murphy, the Supreme Court read the concept of "human capital" into the IRC in *Glenshaw Glass*. There, in holding that punitive damages for personal injury were "gross income" under the predecessor to § 61, the Court stated:

> The long history of ... holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages following injury to property ....  Damages for personal injury are by definition compensatory only. Punitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes.

348 U.S. at 432 n.8.  In Murphy's view, the Court thereby made clear that the recovery of compensatory damages for a "personal injury" -- of whatever type -- is analogous to a "return of capital" and therefore is not income under the IRC or the Sixteenth Amendment.

In support of her reading of the caselaw, Murphy contends the IRC, as drafted shortly after "passage of the [Sixteenth] Amendment demonstrates that compensatory damages designed to make a person whole are excluded from the definition of 'income.'"  She focuses upon the three sources the Supreme Court quoted in *O'Gilvie*, 519 U.S. 84-87, to wit, an Opinion of the Attorney General, a Decision of the Department of the Treasury, and a Report issued by the Ways and Means Committee of the House of Representatives -- each of which predates the first version of § 104(a)(2), namely, § 213(b)(6) of

the Revenue Act of 1918. *See* 40 Stat. 1057, 1066 (1919).

In an opinion rendered to the Secretary of the Treasury on the question whether proceeds from an accident insurance policy were income under the IRC as it stood prior to the 1918 Act, the Attorney General stated:

> Without affirming that the human body is in a technical sense the "capital" invested in an accident policy, in a broad, natural sense the proceeds of the policy do but substitute, so far as they go, capital which is the source of future periodical income. They merely take the place of capital in human ability which was destroyed by the accident. They are therefore "capital" as distinguished from "income" receipts.

31 Op. Att'y. Gen. 304, 308 (1918). In a revenue ruling, the Department of the Treasury then reasoned that

> upon similar principles ... an amount received by an individual as the result of a suit or compromise for personal injuries sustained ... through accident is not income [that is] taxable.

T.D. 2747, 20 Treas. Dec. Int. Rev. 457 (1918).

As for the House Report on the bill that became the Revenue Act of 1918, it states:

> Under the present law it is doubtful whether amounts received through accident or health insurance, or under workmen's compensation acts, as compensation for personal injury or sickness, and damages received on account of such injuries or sickness, are required to be included in gross income.

H.R. Rep. No. 65-767, at 9-10 (1918). Thereafter, the Congress passed the Act, § 213(b)(6) of which excluded from gross income "[a]mounts received, through accident or health insurance or under workman's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness." 40 Stat. 1057, 1066 (1919).

Because the 1918 Act followed soon after ratification of the Sixteenth Amendment, Murphy contends that the statute reflects the meaning of the Amendment as it would have been understood by those who framed, adopted, and ratified it. She observes that in *Dotson v. United States*, 87 F.3d 682 (5th Cir. 1996), the court concluded upon the basis of the House Report that the "Congress first enacted the personal injury compensation exclusion ... when such payments were considered the return of human capital, and thus not constitutionally taxable 'income' under the 16th amendment." *Id.* at 685.

The Government attacks Murphy's constitutional argument on all fronts. First, invoking the presumption that the Congress enacts laws within its constitutional limits, *see Rust v. Sullivan*, 500 U.S. 173, 191 (1991), the Government asserts at the outset that § 104(a)(2) is constitutional even if, as amended in 1996, it does permit the taxation of compensatory damages. Indeed, the Government goes further, contending the Congress could, consistent with the Sixteenth Amendment, repeal § 104(a)(2) altogether and tax compensation even for physical injuries.

Noting that the power of the Congress to tax income "extends broadly to all economic gains," *Commissioner v. Banks*, 543 U.S. 426, 433 (2005), the Government next maintains that compensatory damages "plainly constitute economic gain, for the taxpayer unquestionably has more money

after receiving the damages than she had prior to receipt of the award." On that basis, the Government contends Murphy's reliance upon footnote eight of *Glenshaw Glass* is misplaced; merely because the Congress "has historically excluded personal injury recoveries from gross income, based on the make-whole or restoration-of-human-capital theory, does not mean that such an exclusion is mandated by the Sixteenth Amendment." Because the Supreme Court in *Glenshaw Glass* was construing "gross income" with reference only to the IRC, the Government argues footnote eight addresses only a now abandoned congressional policy, not the outer limit of the Sixteenth Amendment.

According to the Government, the same is true of the 1918 Act and the interpretive rulings that preceded it. Although the Government acknowledges that the dictum in *Dotson*, 87 F.3d at 685, accords with Murphy's position, the Government notes the court there relied solely upon the House Report. Because the House Report merely states "it is doubtful whether ... compensation for personal injury or sickness ... [is] required to be included in gross income," H.R. Rep. No. 65-767, at 9-10 (1918), the Government observes that the "report simply does not establish that Congress believed taxing compensatory personal injury damages would be unconstitutional."

In addition, the Government challenges the coherence of Murphy's analogy between a return of "human capital or well-being" and a return of "financial capital," the latter of which it acknowledges does not constitute income under the Sixteenth Amendment. *See Doyle*, 247 U.S. at 187; *S. Pac. Co.*, 247 U.S. at 335. The Government first observes that financial capital, like all property, has a "basis," defined by the IRC as "the cost of such property," 26 U.S.C. § 1012, adjusted "for expenditures, receipts, losses, or other items, properly chargeable to [a] capital account," *id.* § 1016(a)(1); thus, when a taxpayer sells property,

his income is "the excess of the amount realized therefrom over the adjusted basis." *Id.* § 1001(a). The Government then observes that "[b]ecause people do not pay cash or its equivalent to acquire their well-being, they have no basis in it for purposes of measuring a gain (or loss) upon the realization of compensatory damages." Nor is there any corresponding theory of "human depreciation," which would permit "an offsetting deduction for the exhaustion of the taxpayer's physical prowess and mental agility." Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates, and Gifts* ¶ 5.6 (2003). Finally, the Government points to the Ninth Circuit's dictum in *Roemer v. Commissioner,* 716 F.2d 693 (1983), suggesting that "[s]ince there is no tax basis in a person's health and other personal interests, money received as compensation for an injury to those interests might be considered a realized accession to wealth." *Id.* at 696 n.2.

At the outset, we reject the Government's breathtakingly expansive claim of congressional power under the Sixteenth Amendment -- upon which it founds the more far-reaching arguments it advances here. The Sixteenth Amendment simply does not authorize the Congress to tax as "incomes" every sort of revenue a taxpayer may receive. As the Supreme Court noted long ago, the "Congress cannot make a thing income which is not so in fact." *Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 114 (1925). Indeed, because the "the power to tax involves the power to destroy," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431 (1819), it would not be consistent with our constitutional government, and the sanctity of property in our system, merely to rely upon the legislature to decide what constitutes income.

Fortunately, we need not rely solely upon the wisdom and beneficence of the Congress for, when the Sixteenth Amendment was drafted, the word "incomes" had well

understood limits. To be sure, the Supreme Court has broadly construed the phrase "gross income" in the IRC and, by implication, the word "incomes" in the Sixteenth Amendment, but it also has made plain that the power to tax income extends only to "gain[s]" or "accessions to wealth." *Glenshaw Glass*, 348 U.S. at 430-31. That is why, as noted above, the Supreme Court has held a "return of capital" is not income. *Doyle*, 247 U.S. at 187; *S. Pac. Co.*, 247 U.S. at 335. The question in this case is not, however, about a return of capital -- except insofar as Murphy analogizes human capital to physical or financial capital; the question is whether the compensation she received for her injuries is income.[*]

To determine whether Murphy's compensation is income under the Sixteenth Amendment, we are instructed by the Supreme Court first to consider whether the taxpayer's award of compensatory damages is "a substitute for [a] normally untaxed personal ... quality, good, or 'asset.'" *O'Gilvie*, 519 U.S. at 86. Accordingly, we join our sister circuits by asking: "In lieu of what were the damages awarded"? *Raytheon Prod. Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir. 1944); *see Francisco v. United States*, 267 F.3d 303, 319 (3d Cir. 2001) (treating

---

* In any event, the Government's quarrel with Murphy's analogy, based upon *Glenshaw Glass*, of "human capital" to financial or physical capital is not persuasive. To be sure, the analogy is incomplete; personal injuries do not entail an adjustment to any basis, nor are human resources, such as reputation, depreciable for tax purposes. But nothing in Murphy's argument implies a need to account for the basis in or to depreciate anything. Her point, rather, is that as with compensation for a harm to one's financial or physical capital, the payment of compensation for the diminution of a personal attribute, such as reputation, is but a restoration of the status quo ante, analogous to a "restoration of capital," *Glenshaw Glass,* 348 U.S. at 432 n.8; in neither context does the payment result in a "gain" or "accession[] to wealth," *id.* at 430-31.

*Raytheon's* "in lieu of" test as authoritative); *Tribune Publ'g Co. v. United States*, 836 F.2d 1176, 1178 (9th Cir. 1988) (applying "in lieu of" test to determine whether settlement proceeds were income); *Gilbertz v. United States*, 808 F.2d 1374, 1378 (10th Cir. 1987) (adopting "in lieu of" test to determine whether compensatory damages were income).  Here, if the $70,000 Murphy received was "in lieu of" something "normally untaxed," *O'Gilvie*, 519 U.S. at 86, then her compensation is not income under the Sixteenth Amendment; it is neither a "gain" nor an "accession[] to wealth."  *Glenshaw Glass*, 348 U.S. at 430-31.

As we have seen, it is clear from the record that the damages were awarded to make Murphy emotionally and reputationally "whole" and not to compensate her for lost wages or taxable earnings of any kind.  The emotional well-being and good reputation she enjoyed before they were diminished by her former employer were not taxable as income.  Under this analysis, therefore, the compensation she received in lieu of what she lost cannot be considered income and, hence, it would appear the Sixteenth Amendment does not empower the Congress to tax her award.

Our conclusion at this point is tentative because the Supreme Court has also instructed that, in defining "incomes," we should rely upon "the commonly understood meaning of the term which must have been in the minds of the people when they adopted the Sixteenth Amendment." *Merchants' Loan & Trust Co. v. Smietanka*, 255 U.S. 509, 519 (1921).  And, to discern the original understanding of a provision of the Constitution, we must examine any contemporaneous implementing legislation. *See Myers v. United States*, 272 U.S. 52, 175 (1926) ("This court has repeatedly laid down the principle that a contemporaneous legislative exposition of the Constitution ..., acquiesced in for a long term of years, fixes the

construction to be given its provisions"); *see Macomber*, 252 U.S. at 202 (district judge correctly treated "construction of the [Revenue Act of 1913] as inseparable from the interpretation of the Sixteenth Amendment"). Therefore, we must inquire whether "the people when they adopted the Sixteenth Amendment," or the Congress when it implemented the Amendment, would have understood compensatory damages for a nonphysical injury to be "income."

In the years immediately following ratification of the Sixteenth Amendment, the Congress created and then thrice revised the IRC. *See* Revenue Act of 1913, ch. 16, 38 Stat. 114 (1913); Revenue Act of 1916, ch. 463, 39 Stat. 756 (1916); Revenue Act of 1917, ch. 63, 40 Stat. 300 (1917); Revenue Act of 1918, ch. 18, 40 Stat. 1057 (1919). Of the four enactments, that of 1918 was the first to address the tax treatment of compensatory damages for personal injuries, and it did so without distinguishing between physical and nonphysical injuries. We agree with the Government that the House Report on the 1918 Act is ambiguous and therefore unhelpful on the question before us. We concur in Murphy's view, however, that the Attorney General's 1918 opinion and the Treasury Department's ruling of the same year strongly suggest that the term "incomes" as used in the Sixteenth Amendment does not extend to monies received solely in compensation for a personal injury and unrelated to lost wages or earnings.

That emotional distress and loss of reputation were both actionable in tort when the Sixteenth Amendment was adopted supports the view that compensation for these nonphysical injuries was not regarded differently than was compensation for physical injuries and, therefore, was not considered income by the framers of the Amendment and the state legislatures that ratified it. By 1913, in at least 39 of the then-48 states and in the District of Columbia, the law made compensatory damages for

"mental suffering" recoverable in the same matter as compensatory damages for physical harms; indeed, in 34 of those states, there are reported cases involving defamation and other reputational injuries[*] -- the

---

[*] *See, e.g.*, *Garrison v. Sun Printing & Publ'g Ass'n*, 207 N.Y. 1, 6, 100 N.E. 430, 431 (1912) (plaintiffs are "entitled to recover compensatory damages for mental distress resulting from the publication of defamatory words actionable in themselves"); *Guisti v. Galveston Tribune*, 105 Tex. 497, 504-05 150 S.W. 874, 877 (1912) (holding statute afforded "right to maintain an action for a publication not libelous per se [without having] to allege or prove special damages .... for mental anguish"); *Fields v. Bynum,* 72 S.E. 449, 451 (1911)(general damages in defamation actions "include injury to the feelings, and mental suffering endured in consequence"); *Comer v. Advertiser Co.*, 172 Ala. 613, 55 So. 195, 198 (1911) (in libel actions "damages for mental pain and suffering ... must in all cases be fixed by the jury, in view of all the facts and circumstances surrounding any particular case"); *Miller v. Dorsey*, 149 Mo. App. 24, 129 S.W. 66, 69 (1910) (upholding jury award of damages in action for slander "to compensate [plaintiff] for the mortification and shame he might have suffered, and the disgrace and dishonor attempted to be cast upon him, and all damages done to his reputation"); *Jozsa v. Moroney*, 125 La. 813, 821, 51 So. 908, 911 (1910) (in libel action "damages for mental suffering alone can be recovered, although the party may have suffered no other loss"); *Moore v. Maxey*, 152 Ill. App. 647, 1910 WL 1686, at *2 (1910) ("Where words spoken are actionable *per se* .... there need be no direct evidence of mental suffering to enable the jury to consider it in their estimate of damages"); *Davis v. Mohn*, 145 Iowa 417, 124 N.W. 206, 207 (1910) (holding mental "pain and suffering may be considered by the jury in determining the amount of damages in cases where the words spoken are actionable [as slander] per se"); *Henry v. Cherry & Webb*, 30 R.I. 13, 73 A. 97, 102 (1909) (noting that "mental suffering alone [will] sustain a right of action" if "the words spoken or pictures published are of such a nature that the court can conclude, as a matter of law, that they will tend to degrade the person, or hold him up to public hatred, contempt, or ridicule, or cause him to

be shunned and avoided"); *Neafie v. Hoboken Printing & Publ'g Co.*, 75 N.J.L. 564, 566, 68 A. 146, 147 (1907) (rejecting view that "mental anguish cannot be considered in estimating compensatory damages in an action of libel"); *McArthur v. Sault News Printing Co.*, 148 Mich. 556, 558, 112 N.W. 126, 127 (1907) ("A woman might have a bad reputation and a bad character, neither of which would be changed by such a [libelous] publication, and yet be entitled to substantial damages for injuries to her feelings resulting from the publication"); *Todd v. Every Evening Printing Co.*, 22 Del. 233, 66 A. 97, 99 (1907) ("amount to be awarded to the plaintiff should be such as would reasonably compensate him for any wrong done to his reputation, good name, or fame, and for any mental suffering caused thereby as shown by the evidence"); *Gendron v. St. Pierre*, 73 N.H. 419, 62 A. 966, 969 (1905) ("amount of the damages" in slander action "depends in part upon the effect of the malice upon the plaintiff's mind"); *Ott v. Press Pub. Co.*, 40 Wash. 308, 310, 82 P. 403, 404 (1905) ("upon a proper showing damages for mental pain and suffering may be recovered" in libel action); *Wash. Times Co. v. Downey*, 26 App. D.C. 258, 1905 WL 17653, at *4 (1905) (holding "plaintiff is ... entitled to recover as general damages for injury to her feelings and the mental suffering which she endured as a natural result of the [libelous] publication"); *Hanson v. Krehbiel*, 68 Kan. 670, 75 P. 1041, 1042 (1904) (noting that general damages for libel and slander actions are "designed to compensate for that large and substantial class of injuries arising from injured feelings, mental suffering and anguish, and personal and public humiliation"); *Finger v. Pollack*, 188 Mass. 208, 209, 74 N.E. 317, 318 (1905) ("In an action for slander one of the elements of damage is mental suffering"); *Davis v. Starrett*, 97 Me. 568, 55 A. 516, 519 (1903) ("plaintiff is entitled to recover compensation [for] slander, such as injury to the feelings and injury to the reputation"); *Bedtkey v. Bedtkey*, 15 S.D. 310, 89 N.W. 479, 480 (1902) (holding "evidence of injury to feelings having been admitted without objection, damages therefore are recoverable"); *Kidder v. Bacon*, 74 Vt. 263, 52 A. 322, 324 (1902) ("It is well settled that when the words spoken are actionable the jury have a right to consider the mental suffering which may have been occasioned to a party by the publication of the slanderous words, and to allow damages therefor");

*Hacker v. Heiney*, 111 Wis. 313, 87 N.W. 249, 251 (1901) (rejecting contention that "no recovery can be had for injury to feelings" in action for slander); *McCarty v. Kinsey*, 154 Ind. 447, 57 N.E. 108, 108 (1900) (holding it was "proper for the jury to consider" slanderous words used in course of an assault and battery "with all the circumstances in evidence, and the humiliation, degradation, shame, and loss of honor, and mental anguish, if any, caused thereby, in determining the amount of damages"); *Gray v. Times Newspaper Co.*, 78 Minn. 323, 324, 81 N.W. 7, 7 (1899) (plaintiff "was entitled to some damages for injury to his feelings, shame, and loss of the good opinion of his fellows, and injury to his standing in the community"); *Louisville Press Co. v. Tennelly*, 105 Ky. 365, 49 S.W. 15, 17 (1899) ("the rule is well settled that the publication of a libel exposes the publisher, not only to compensatory damages for the loss of business, but also to a judgment for the mental suffering that the libel or slander inflicts upon the plaintiff"); *Cole v. Atlanta & W.P.R. Co.*, 102 Ga. 474, 31 S.E. 107, 108 (1897) (permitting action by plaintiff passenger against railroad for its employee's slander, which caused plaintiff "to undergo the pain and mortification of being publicly denounced"); *Fry v. McCord*, 95 Tenn. 678, 33 S.W. 568, 571 (1895) (damages for slander per se may include "pain, mental anxiety, or general loss of reputation"); *Taylor v. Hearst*, 170 Cal. 262, 270, 40 P. 392, 393-94 (1895) ("actual damages embraces recovery for loss of reputation, shame, mortification, injury to feelings, etc.; and while special damages must be alleged and proven, general damages for outrage to feelings and loss of reputation need not be alleged in detail"); *Taylor v. Dominick*, 36 S.C. 368, 15 S.E. 591, 593-94 (1892) ("the elements of damages in the action for malicious prosecution are the injury to the reputation or character, feelings, health, mind, and person, as well as expenses incurred in defending the prosecution"); *Stallings v. Whittaker*, 55 Ark. 494, 18 S.W. 829, 831 (1892) (damages in slander action may compensate for "mental suffering and mortification"); *Republican Pub. Co. v. Mosman*, 15 Colo. 399, 410, 24 P. 1051, 1055 (1890) ("in cases of written slander where the defamatory matter is libelous *per se*, the mental suffering of the plaintiff, occasioned by the false publication, may be taken into consideration, in awarding general compensatory damages"); *Commercial Gazette Co. v. Grooms*, 10

very sort of injury Murphy suffered -- and at least five more states allowed an action for alienation of affections, also a nonphysical injury.[*] As a result, we see no meaningful distinction between Murphy's award and the kinds of damages recoverable for personal injury when the Sixteenth Amendment was adopted. Because, as we have seen, the term "incomes," as understood in 1913, clearly did not include damages received in compensation for a physical personal injury, we infer that it likewise did not include damages received for a nonphysical

---

Ohio Dec. Reprint 489, 1889 WL 346, at *4 (1889) ("The most natural result from an injury to reputation is mental suffering and it is a proper element to be considered in estimating damages in a libel suit"); *Boldt v. Budwig*, 19 Neb. 739, 28 N.W. 280, 283 (1886) ("jury should consider the damage to her character, as well as her mental suffering caused [by the slander]"); *Riddle v. McGinnis*, 22 W.Va. 253, 1883 WL 3242, at *15 (1883)("in ... actions for wilful and wanton injuries done to the person and reputation ... the plaintiff is entitled to recover damages ... for his mental anguish"); *Swift v. Dickerman*, 31 Conn. 285, 1863 WL 763, at *7 (1863) (holding "anxiety and suffering [due to slander] were proper subjects for compensation to the plaintiff, and ought to be atoned for by the defendant"); *Beehler v. Steever*, 1 Miles 146, 1837 WL 3209, at *6 (1837) (noting in syllabus that "[o]utrage to the plaintiff's feelings and peace of mind may be considered" by the jury in awarding damages for slander).

* *See, e.g.*, *Greuneich v. Greuneich*, 23 N.D. 368, 137 N.W. 415 (N.D. 1912); *Hillers v. Taylor*, 116 Md. 165, 81 A. 286 (Md. 1911); *Seed v. Jennings*, 47 Or. 464, 83 P. 872 (Or. 1905); *Tucker v. Tucker*, 74 Miss. 93, 19 So. 955 (Miss. 1896); *Samuel v. Marshall*, 30 Va. 567, 1832 WL 1822 (Va. 1832). An action for "alienation of affection" enabled the plaintiff to recover damages for mental suffering and reputational damage arising from the defendant's interference in the relationship between the plaintiff and his or her spouse. *See generally* RESTATEMENT (SECOND) OF TORTS § 683 cmt. f (1977) ("It is unnecessary for recovery that the acts of the defendant cause any financial loss to the injured spouse").

injury and unrelated to lost wages or earning capacity.

The IRS itself reached the same conclusion when it first addressed the question, expressly affirming that personal injuries included nonphysical personal injuries:

> [T]here is no gain, and therefore no income, derived from the receipt of damages for alienation of affections or defamation of personal character .... If an individual is possessed of a personal right that is not assignable and not susceptible of any appraisal in relation to market values, and thereafter receives either damages or payment in compromise for an invasion of that right, it can not be held that he thereby derives any gain or profit.

Sol. Op. 132, I-1 C.B. 92, 93 (1922); *see also Hawkins v. Commissioner,* 6 B.T.A. 1023, 1024-25 (U.S. Bd. of Tax App. 1927) (holding "compensation for injury to [plaintiff's] personal reputation for integrity and fair dealing" was not income because it was "an attempt to make the plaintiff whole as before the injury"). Note that the Service regarded such compensation not merely as excludable under the IRC, but more fundamentally as not being income at all.

In sum, every indication is that damages received solely in compensation for a personal injury are not income within the meaning of that term in the Sixteenth Amendment. First, as compensation for the loss of a personal attribute, such as well-being or a good reputation, the damages are not received in lieu of income. Second, the framers of the Sixteenth Amendment would not have understood compensation for a personal injury -- including a nonphysical injury -- to be income. Therefore, we hold § 104(a)(2) unconstitutional insofar as it permits the taxation of an award of damages for mental distress and loss of reputation.

### III.  Conclusion

Albert Einstein may have been correct that "[t]he hardest thing in the world to understand is the income tax," *The Macmillan Book of Business and Economic Quotations* 195 (Michael Jackman ed., 1984), but it is not hard to understand that not all receipts of money are income.  Murphy's compensatory award in particular was not received "in lieu of" something normally taxed as income; nor is it within the meaning of the term "incomes" as used in the Sixteenth Amendment.  Therefore, insofar as § 104(a)(2) permits the taxation of compensation for a personal injury, which compensation is unrelated to lost wages or earnings, that provision is unconstitutional.  Accordingly, we remand this case to the district court to enter an order and judgment instructing the Government to refund the taxes Murphy paid on her award plus applicable interest.

*So ordered.*