T.C. Memo. 2007-286

UNITED STATES TAX COURT

CECIL R. AND CAROL L. HAWKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22833-05.                Filed September 20, 2007.

Cecil R. and Carol L. Hawkins, pro sese.

<u>Michael A. Skeen</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case was submitted to the Court fully
stipulated pursuant to Rule 122.[1]  Petitioners petitioned the
Court to redetermine respondent's determination of a $7,153

_____

[1] Rule references are to the Tax Court Rules of Practice and
Procedure.  Unless otherwise noted, section references are to the
applicable versions of the Internal Revenue Code.

deficiency in their 2003 Federal income tax and a $1,415 accuracy-related penalty under section 6662(a). We decide whether $25,000 received by Carol Hawkins (petitioner) in settlement of her lawsuit (lawsuit) related to the termination of her employment is excluded from her gross income under section 104(a)(2). We hold it is not.

## Background

All facts were stipulated or contained in the exhibits submitted with the parties' stipulation of facts. Those stipulated facts and exhibits are incorporated herein by this reference. Petitioner and her spouse, Cecil Hawkins, filed a joint 2003 Federal income tax return. They resided in San Leandro, California, when their petition was filed commencing this proceeding.

Petitioner was employed as an executive assistant by Alameda County Fair Association (Alameda) from 1999 to 2002. Shortly after she was hired, she was told that she would receive a one-hour paid lunch. In May 2002, she was told that she was not entitled to a one-hour paid lunch and that she had to repay the wages she received from May 15, 2001, to May 15, 2002, attributable to her lunch hours. Petitioner refused to repay those wages, and she was placed on administrative leave. She was later told that she had resigned her position even though she was willing to continue working at Alameda.

Petitioner commenced the lawsuit in 2003 against Alameda and its chief executive officer (collectively, Alameda). She alleged in the lawsuit, filed and prosecuted by her pro se in the United States District Court for the Northern District of California, that Alameda had caused her damages stemming from race discrimination, breach of contract, breach of the covenant of good faith and fair dealing, and harassment. She claimed in the lawsuit the following damages:

| | |
|---|---|
| Backpay | $24,000 |
| Future pay | 100,000 |
| Emotional distress (including mental and physical pain and suffering) | 75,000 |
| Health benefits | 800 |
| Punitive and exemplary damages | 300,000 |
| Total | [1]490,800 |

[1] The claimed damages actually total $499,800 rather than $490,800 as reported by petitioner.

In November 2003, petitioner and Alameda agreed to settle the lawsuit. Under the settlement agreement, petitioner released all claims against Alameda in exchange for a single payment of $25,000. The settlement agreement stated that petitioner had filed the lawsuit against Alameda seeking "wages, penalties, other damages, and attorneys' fees", that Alameda would issue petitioner a Form 1099 in connection with its payment of the $25,000, and that petitioner had to give Alameda a completed Form W-9, Request for Taxpayer Identification Number and

Certification, as a condition precedent to Alameda's paying the $25,000 to petitioner.

Petitioner received the $25,000 in 2003, and Alameda issued to petitioner a 2003 Form 1099-MISC, Miscellaneous Income, reporting its payment of that amount to her as nonemployee compensation. Petitioner did not report the $25,000 on her 2003 Federal income tax return.

## Discussion

Respondent determined that the $25,000 is included in petitioner's 2003 gross income. Petitioners argue alternatively that the $25,000 is not "income" in the context of the 16th Amendment and that the $25,000, if income, is excluded from their gross income under section 104(a)(2) as damages received for emotional distress inclusive of mental pain and anguish. In their posttrial brief, petitioners point the Court to Murphy v. IRS, 460 F.3d 79 (D.C. Cir. 2006), and assert that the opinion there controls this case. In Murphy, a panel of the Court of Appeals for the D.C. Circuit held that section 104(a)(2) violated the 16th Amendment insofar as it permitted the taxation of an award of damages for mental distress and loss of reputation. The opinion reasoned that damages awarded to the taxpayer for mental pain and anguish were not received in lieu of something normally taxed as income, nor were they income within the meaning of the 16th Amendment.

Without regard to which party bears the burden of proof, we find and hold that the $25,000 is income to petitioner and that none of the $25,000 constitutes damages received "on account of personal physical injuries or physical sickness" within the meaning of section 104(a)(2).[2]  We reject at the outset petitioners' reliance on Murphy v. IRS, supra.  After the filing of petitioners' posttrial brief, the Court of Appeals for the D.C. Circuit vacated its judgment resulting from that opinion and reheard arguments on the case.  Later, in Murphy v. IRS, 493 F.3d 170 (D.C. Cir. 2007), the Court of Appeals for the D.C. Circuit held that the damages received by the taxpayer were income included in the taxpayer's gross income and were outside the exclusion in section 104(a)(2).  We agree without further comment that the $25,000 is income to petitioner and limit our subsequent inquiry to whether the $25,000 is excluded from their gross income under section 104(a)(2).

Section 104(a)(2) is construed narrowly.  See, e.g., O'Gilvie v. United States, 519 U.S. 79 (1996); Commissioner v. Schleier, 515 U.S. 323, 328 (1995).  Under section 104(a)(2), settlement proceeds are excludable from gross income to the extent:  (1) The underlying cause of action is based upon tort or

---

[2] We apply sec. 104(a)(2) as amended in 1996 by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, effective generally for amounts received after Aug. 20, 1996.  That amendment, in relevant part, added the modifier "physical" after "personal" and before "injuries".

tort-type rights, and (2) the proceeds were received on account of "personal physical injuries" or "physical sickness". See Commissioner v. Schleier, supra at 333-334 (analyzing section 104(a)(2) before its amendment in 1996); Robinson v. Commissioner, 102 T.C. 116 (1994), affd. in part and revd. in part on an issue not relevant herein 70 F.3d 34 (5th Cir. 1995); Shaltz v. Commissioner, T.C. Memo. 2003-173. We focus on the second requirement and ask ourselves whether petitioner's $25,000 settlement was received on account of "personal physical injuries" or "physical sickness". In this context, the terms "physical injury" and "physical sickness" do not include emotional distress, except to the extent of damages not in excess of the amount paid for medical care described in section 213(d)(1)(A) and (B) attributable to emotional distress. See sec. 104(a) (flush language).

We determine the reason for the settlement payment by ascertaining the intent of the payor in making the payment. See Robinson v. Commissioner, supra at 127. We make that determination by analyzing all relevant facts and circumstances. See id.; see also Shaltz v. Commissioner, supra. We conclude from our analysis that petitioner never sought in the lawsuit a recovery of damages for "personal physical injuries" or "physical sickness" and, most importantly, that Alameda did not pay the $25,000 to petitioner with any intent to settle a claim of hers

for "personal physical injuries" or "physical sickness". In the latter regard, we find from the record that the settlement agreement memorialized Alameda's understanding that petitioner had filed the lawsuit against Alameda seeking "wages, penalties, other damages, and attorneys' fees", that Alameda would issue petitioner a Form 1099 to reflect its payment to her of the $25,000 as a payment of income, and that Alameda required petitioner to give to it a completed Form W-9 as a condition precedent to Alameda's paying the $25,000 to petitioner. We also find with respect to the $25,000 payment that Alameda actually issued to petitioner a 2003 Form 1099-MISC reporting that it had paid her the $25,000 as nonemployee compensation.

We hold that the $25,000 was not paid to petitioner for personal physical injuries or physical sickness within the meaning of section 104(a)(2). While petitioners emphasize the fact that petitioner claimed damages for emotional distress, and we believe that part of the $25,000 may have been paid to satisfy and extinguish that claim, our conclusion does not change. Damages for emotional distress no longer qualify for exclusion under section 104(a)(2), except to the extent that they do not exceed the amount paid for medical care related to the emotional distress. Sec. 104(a)(2) and flush language; Kidd v. Commissioner, T.C. Memo. 2004-135; see H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56 (emotional distress,

including symptoms such as insomnia, headaches, and stomach disorders, is not considered a physical injury or physical sickness, except that an exclusion may be allowed to the amount paid for medical care attributable to the emotional distress). See generally Black's Law Dictionary 542 (7th ed. 1999) ("emotional distress" denotes "A highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering."). Petitioners have not asserted that they paid for any medical care attributable to emotional distress, so as to come within the just-referenced exception, and the record does not establish that any such payments were in fact made.

All arguments made by petitioners for a holding contrary to that expressed herein have been considered, and we reject those arguments not discussed herein as irrelevant or without merit.

<u>Decision will be entered for respondent</u>.